IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LAWRENCE G. MYSLEWSKI,

Plaintiff,

v.

THE CITY OF REHOBOTH BEACH,
SAMUEL R. COOPER, STAN MILLS,
MARK HUNKER, PATRICK GOSSETT,
LORRAINE ZELLERS, PAT COLUZZI,
WILLIS SARGENT, GREGORY J.
FERRESE, and KEITH W. BANKS,

Defendants.

Civil Action No. 13-00891-RGA

## MEMORANDUM OPINION

David L. Finger, Esq. (argued), FINGER & SLANINA, LLC, Wilmington, DE.

Attorney for Plaintiff Lawrence G. Myslewski.

Megan T. Mantzavinos, Esq. (argued), MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY,
P.C., Wilmington, DE; Emily K. Silverstein, Esq., MARKS, O'NEILL, O'BRIEN, DOHERTY
& KELLY, P.C., Wilmington, DE.

Attorneys for Defendants City of Rehoboth Beach, Samuel R. Cooper, Stan Mills, Mark
Hunker, Patrick Gossett, Lorraine Zellers, Pat Coluzzi, Willis Sargent, Gregory J. Ferrese, and
Keith W. Banks.

October 17, 2013

*Richard G. Andrews*
**ANDREWS, U.S. DISTRICT JUDGE**:

Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to

Federal Rule of Civil Procedure 12(b)(6) (D.I. 5) filed on June 24, 2013. The motion is fully

briefed (D.I. 6, 8 & 9) and oral argument was held on October 2, 2013. For the reasons that

follow, the Court will grant the Defendants' motion to dismiss.

## I. BACKGROUND

On May 20, 2013, Lawrence G. Myslewski ("Plaintiff") filed a Complaint pursuant to 42

U.S.C. § 1983 against the City of Rehoboth, its Board of Commissioners, and several other

employees (collectively "Defendants"). (D.I. 1). The Complaint asserts an "as applied"

challenge to Ordinance 0313-02 ("Ordinance"), which regulates the parking of motor scooters[1] in

Rehoboth's public areas, claiming that the Ordinance denies him equal protection of the laws

under the Fourteenth Amendment of the United States Constitution. (D.I. 1). The Ordinance's

purpose is to "provide for the safe and effective use and parking of motor scooters in the City

through the establishment of a parking permit system," and to prevent the safety hazards caused

by parking motor scooters on sidewalks or bicycle racks. (D.I. 8-2 at § 92-269; D.I. 1 at 3).

Although  motor scooter owners are allowed to park in metered spots without a permit so long as

the meter is paid, the Ordinance mandates the purchase of a $40 permit to park any motor scooter

---

[1] "Motor Scooter" is defined as "A vehicle having two tandem wheels and a step-through chassis that is powered by a motor that is capable of propelling the device without human propulsion. 'Motor scooter' shall include any device included within the definition of 'moped,' but shall not include any device that is included within the definition of 'motorized skateboard or scooter,' 'motorized wheelchair,' or 'triped.'" (D.I. 8-2 at § 92-271).

1

in Rehoboth's traditional permit parking area.[2] (D.I. 8-2 at §§ 92-273 to -275). In addition to the available permit parking area described above, the Ordinance requires Rehoboth's City Manager to designate certain parking areas exclusively for motor scooters that have a permit. (*Id.* at § 92-272). The Plaintiff's cause of action arose when he received a letter dated April 16, 2013, stating that the Ordinance prohibits him from parking his motor scooter on the public street in front of his house without a permit, even though no permit is required to park his car there. (D.I. 8 at 7). This lawsuit followed.

## II. LEGAL STANDARD

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The analysis turns on the application of the Equal Protection Clause of the Fourteenth Amendment to this case.

The Equal Protection Clause commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws."[3] U.S. CONST. amend. XIV, § 1. This promise,

---

[2] The permit parking area is defined as "[a]ny parking space not controlled by a meter," which would include the public streets in Rehoboth. (D.I. 8-2 at § 92-261). The parking of motor scooters on private property, however, is not covered by the Ordinance.

[3] For purposes of the Equal Protection Clause analysis, municipalities are considered to be State actors. *See United Bldg. & Constr. Trades Council of Camden County & Vicinity v. Mayor of Camden*, 465 U.S. 208, 215 (1984) ("[A] municipality is merely a political subdivision of the State from which its authority derives. It is as true of the Privileges and Immunities Clause as of the Equal Protection Clause that what would be unconstitutional if done directly by the State can no more readily be accomplished by a city deriving its authority from the State." (internal citations omitted)); *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) (recognizing that "§ 1983 equal protection claims may be brought against individuals as well as municipalities and certain other state entities").

however, "must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." *Romer v. Evans*, 517 U.S. 620, 631 (1996); *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 271–72 (1979). Indeed, a law's classification that neither burdens a fundamental right nor singles out a suspect class will be upheld "so long as it bears a rational relation to some legitimate end." *Romer*, 517 U.S. at 631; *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) ("The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."). The Equal Protection Clause grants even wider latitude with respect to social or economic legislation, and "the Constitution presumes that even improvident decisions will eventually be rectified by the democratic process." *City of Cleburne*, 473 U.S. at 440. When looking at an ordinary case, "a law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." *Romer*, 517 U.S. at 632.

## III. DISCUSSION

As an initial matter, the Plaintiff has asserted only an as applied challenge, and does not contest the facial validity of the Ordinance. (D.I. 8 at 9). "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). By contrast, an as applied challenge is one in which "the plaintiff argues that a statute, even though generally constitutional, operates unconstitutionally as to him or her because of the plaintiff's particular circumstances." *Tex. Workers' Comp. Comm'n*

3

*v. Garcia*, 893 S.W.2d 504, 518 n.16 (Tex. 1995); *see also Batson v. Kentucky*, 476 U.S. 79, 88

(1986) (noting Court has "found a denial of equal protection where the procedures implementing

a neutral statute operated" in discriminatory fashion).

The Ordinance in this case neither burdens a fundamental right nor targets a suspect

class.[4] Therefore, the rational basis standard applies, and the Ordinance is constitutional if "there

is any reasonably conceivable state of facts that could provide a rational basis for the

classification" that would further the government's legitimate objective. *Armour v. City of*

*Indianapolis, Ind.*, 132 S. Ct. 2073, 2080 (2012) (quoting *FCC v. Beach Commc'ns, Inc.*, 508

U.S. 307, 313 (1993)). The parties appear to agree that the Ordinance's objective is to ensure

public safety, and, more specifically, to reduce the hazards caused by the practice of parking

motor scooters on sidewalks and in bicycle racks. (D.I. 6 at 9) ("[T]he purpose of the Ordinance

is to promote public and pedestrian safety by giving motor scooters alternatives to parking on the

sidewalks and in bicycle racks within the City."); (D.I. 8 at 11) ("The purpose of the Ordinance is

to end the practice of motor scooters parking on sidewalks and in bicycle racks."). No all-

inclusive reference list of legitimate government interests exists, but enhancing public safety is

the quintessential objective for which any governing body strives. *See, e.g.*, *Romer*, 517 U.S. at

632 (citing series of cases that relied upon everything from potential traffic hazards caused by

advertisements on moving vehicles to efficiency and safety benefits of "a closely knit pilotage

system" as legitimate justifications for classification). Thus, the Court concludes that the

---

[4] The Plaintiff appears to concede that motor scooter owners are not a suspect classification and that the right to park one's motor scooter on a public street is not a fundamental right because his brief only addresses the rational basis standard. (D.I. 8 at 9-13).

4

Defendants have articulated a legitimate government interest.

The Ordinance is also rationally related to the legitimate objective of promoting public safety. The basis for the Plaintiff's as applied challenge is that "the Ordinance is unconstitutional as applied to residents of Rehoboth Beach who, as a result of the Ordinance, may park their cars and motorcycles on the street in front of their homes without charge, but may not so park their motor scooters." (D.I. 8 at 9). But motor scooters are distinct from other vehicles in that motor scooters "are the only types of vehicles which can easily access and be driven on sidewalks." (D.I. 6 at 11). Indeed, the Defendants made a conscious decision to classify motor scooters separately from other modes of transportation, including cars and motorcycles, because of this unique threat posed by motor scooters. (*Id.*).

Moreover, the Plaintiff focuses on one portion of the Ordinance–the part requiring a permit to park a motor scooter on a public street in a residential area but not requiring a permit to park a car in the same spot–in his analysis of the rational basis standard. The permit requirement in residential areas, he claims, "does not promote safety on the boardwalk, the sidewalks, the streets or anywhere else." (D.I. 8 at 13). But the Defendants believed that the creation of a dedicated parking area for motor scooters with permits, paid for by the permitting fees contained in the Ordinance, would disincentivize scooter owners from parking and driving on the sidewalk. The Defendants envisioned that the Ordinance would "push[] motor scooter owners to get permits by limiting their permit-less on-street parking opportunities . . . in order to incentivize scooter owners to get permits and park in the permit-required scooter-only parking areas as opposed to on City sidewalks." (D.I. 9 at 4). In this regard, the Ordinance's permit requirement represents an "important first step to getting motor-scooters off the sidewalks and into these new

5

parking areas." (*Id.*). This holds true even if the Plaintiff only parked his motor scooter out front of his house in the residential area.[5]  It was rational for the Defendants to conclude that simultaneously eliminating parking options for scooters without permits and providing designated motor scooter parking areas for scooters with permits would achieve the stated goal of discouraging motor scooters from parking on the sidewalks.  Thus, the Defendants have supplied a "reasonably conceivable state of facts that could provide a rational basis for the classification." *Armour*, 132 S. Ct. at 2080.

The issue is not whether the Ordinance is the most effective means to achieve the Defendants' end of improving public safety.  It is not even whether the chosen means will be marginally effective.  The Court is only required to ask whether a rational basis exists for the Ordinance's classification.  The Court holds that the use of a parking permit system is rationally related to the legitimate objective of preventing motor scooters from parking on the sidewalks and in bicycle racks.  The inquiry ends there.  Therefore, the Ordinance is constitutionally valid as applied, and the Plaintiff's Complaint must be dismissed.

## IV. CONCLUSION

For the reasons set forth above, the Defendants' motion to dismiss is granted.  A separate Order, consistent with this Memorandum Opinion, will be entered.

---

[5] The Ordinance gives the Plaintiff the opportunity to take advantage of the benefits provided by the new permit-only scooter parking areas, should he so desire.